HOMER MORGAN and another *v.* JOHN M. MASON.

Where the plaintiffs, brokers, being employed by a third person to sell and also to purchase a house, were, at about the same time, also employed by the defendant to sell a house for him, and introduced the parties to each other and negotiated between them; *held,* that the plaintiffs were entitled to commissions from the defendant upon a sale of his house to such third person, although such sale did not take place until three months afterwards, and the bargain was consummated by another, it appearing that the purchaser delayed closing any bargain for the defendant's house until the plaintiffs finally—after said three months—succeeded in selling the house originally owned by the said purchaser.

Morgan *v.* Mason.

In an action for commissions upon a sale, a variance between the complaint and evidence, the former alleging that the sale was for a certain sum, and the latter proving that it was for a greater sum, is not material, and may be disregarded or cured by amendment, where the defendant has not been misled.

So, also, where the variance lies in an allegation of a special agreement as to compensation, and the evidence establishes the value of the services rendered.

In the absence of a special agreement as to the amount of commissions, usage may be shown.

THIS case came before the court, upon an appeal by the plaintiffs from the report of a referee dismissing their complaint. The facts material to the questions determined appear in the opinion.

*Columbus B. Rogers*, for the plaintiffs.

*Samuel Jones*, for the defendant.

BY THE COURT. DALY, J.—The facts in this case show, I think, sufficiently, that the plaintiffs were the procuring cause of the sale. (*Chilton* v. *Butler*, 1 E. D. Smith, 150.)

The plaintiffs were partners, doing business as real estate brokers, and were employed by the defendant to procure a purchaser for his house. They offered it for sale, and the defendant called upon them several times to see what prospect there was of selling it. Mrs. Kent, who subsequently purchased it, called upon them for the purpose of selling her house and purchasing another. She employed them to sell her house, and asked them for a list of houses for sale. They showed her a list, with the defendant's house upon it, and she went to see it, and was pleased with it. The plaintiffs offered it to her for sale, upon a written request from her. According to their witness, they offered it for $9,000 ; according to her statement to Mr. Brady, for $9,500. But as her house was not sold, the matter remained in abeyance. After Mrs. Kent was informed that the defendant's house was for sale, the defendant called upon the plaintiffs. They conversed a great deal together, for about half an hour, and the plaintiffs

informed him that they were in negotiation with Mrs. Kent in relation to the sale of the house, and that they thought she would buy it.

In the fall of the same year, about three months afterwards, Mrs. Kent called on the plaintiffs again, to put a bill on her house, and it was sold. She then called on Mr. Brady and requested him to see the defendant, and ascertain if he was willing to sell. Mr. Brady did so, but the defendant at first declined, upon the ground that he had made arrangements to reside in it with his family for the winter; but finally concluded to take the matter into consideration. Mrs. Kent then called upon him, and offered him $9,000, which he refused; but a sale was effected between them for $9,500.

These facts show that it was through the plaintiffs' instrumentality that Mrs. Kent was apprised of the fact that the defendant's house was for sale; and the information thus received led to her ultimately purchasing it. Who procured her, if the plaintiffs did not? Certainly not the defendant; and she did not learn the fact herself, that the defendant's house was for sale. She was indebted for that knowledge to the plaintiffs, and the defendant was benefited by that knowledge being imparted to her.

The plaintiffs claimed, upon a special agreement, to recover one per cent. commission. The referee has found that there was no such agreement. It was proved, however, that there was a custom among real estate brokers as to commissions on selling real estate and procuring a purchaser. To the evidence no objection was made; but when the witness was asked, what was the customary commission, the question was objected to. The existence of a custom having been shown, without objection, it was competent to ask what was the customary commission. It was shown to be one per cent. And if a custom existed to pay one per cent., it will be inferred that the defendant contracted for the plaintiffs' services in view of the custom, in the absence of any proof that a different rate was agreed upon. The report should be set aside as a finding not in accordance with the facts.

It is objected that there was a fatal variance between the pleadings and the proofs. We think that §§ 169 and 171 of the Code furnish an answer to the objection. As a rehearing is ordered, the party, if he think fit, may amend his complaint.

Judgment dismissing the complaint reversed, and case referred back. Report opened; either party at liberty to give further evidence, on payment of costs, by the plaintiffs, of proceedings after the reference was closed.